UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MRP Trading I A, LLC; Portfolio Advisors             File No. 20-cv-1874 (ECT/KMM)
VIII, LLC; Allegiance Capital, LLC,

        Plaintiffs,

v.

                                 **OPINION AND ORDER**

Dan K. Eberhart; Canary, LLC; Frontier
Energy Group, Inc.; Canary Drilling
Services, LLC; Canary Production Services,
LLC; Canary Wellhead Equipment, Inc.;
Canary Wellhead Manufacturing, Inc.,

        Defendants.

Timothy M. Kelley and Kevin P. Kitchen, Stinson LLP, Minneapolis, MN, for Plaintiffs
MRP Trading I A, LLC, Portfolio Advisors VIII, LLC, and Allegiance Capital, LLC.

Shawn M. Perry, Perry & Perry, PLLP, Minneapolis, MN; and Robin R. Lambourn,
Lambourn Law Firm, PLLC, Denver, CO, for Defendants Dan K. Eberhart, Canary, LLC,
Frontier Energy Group, Inc., Canary Drilling Services, LLC, Canary Production Services,
LLC, Canary Wellhead Equipment, Inc., and Canary Wellhead Manufacturing, Inc.

      This case involves a series of loans that Defendant Canary, LLC and several

affiliated companies (the "Canary Defendants") obtained from Plaintiffs MRP Trading I

A, LLC, Portfolio Advisors VIII, LLC, and Allegiance Capital, LLC.  Plaintiffs claim that

the Canary Defendants defaulted on their loans and that Defendant Dan K. Eberhart,

Canary's CEO, failed to fulfill his personal guaranty of the Canary Defendants'

obligations.  Eberhart and the Canary Defendants have filed motions to dismiss three

counts brought by MRP or, in the alternative, to sever those counts and transfer venue.

According to Defendants, venue selection clauses[1] that apply to the three challenged counts required MRP to pursue its claims in state or federal court in Houston, Texas. Defendants' motions will be denied because the clauses in question are permissive, not mandatory.

I[2]

The commercial loan transactions underlying this dispute have a somewhat complicated history, but only the basic facts are necessary to resolve the present motions. In March 2019, MRP and all Defendants entered into a Second Amended and Restated Revolving Credit and Term Loan Agreement. Am. Compl. ¶¶ 20–21 [ECF No. 4], Ex. 2 ("Loan Agreement") [ECF No. 4-1]. The Loan Agreement "amended and restated, without novation," the terms of an earlier loan agreement in which MRP had acquired an interest from another lender, and it "reaffirm[ed] the validity and enforceability" of loan documents associated with that prior agreement. *Id.* ¶ 20; *see id.* ¶¶ 14–16. "In connection with, and

---

[1]    This opinion uses the phrase "venue selection clause" rather than "forum selection clause" to describe the clauses at issue in this case. This is because of a distinction, discussed below, that Texas law draws between the two categories. Federal law does not recognize the same distinction, and many courts use the terms interchangeably. This opinion and some of the cited authorities will accordingly refer to "forum selection clauses" when describing principles that apply equally to both categories. When the distinction matters, the opinion will say so.

[2]    When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must ordinarily consider only those facts in or necessarily embraced by the complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). Here, Defendants have also moved to transfer venue under 28 U.S.C. § 1404(a), and courts considering such motions "may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents." *Finn v. Moyes*, No. 14-cv-1293 (MJD/TNL), 2015 WL 505750, at *4 (D. Minn. Feb. 6, 2015) (adopting report and recommendation). Nonetheless, all facts relevant to Defendants' motions are found in— or embraced by—the operative Amended Complaint.

as a condition to, the execution of the Loan Agreement," Canary executed two promissory

notes in MRP's favor.  *Id.* ¶¶ 23–26, Exs. 3 ("Term Note"), 4 ("Revolving Note").  These

notes "consolidated the variously acquired promissory notes evidencing" term and

revolving loans extended to Canary under the earlier loan agreement.  *Id.* ¶¶ 23, 25.

Finally, as part of the Loan Agreement, Eberhart "reaffirmed [a] continuing obligation" he

had incurred under a personal guaranty of the earlier loan agreement.  *Id.* ¶ 22; *see id.*

¶¶ 17–19, Ex. 1 ("Guaranty").

Each of these loan documents—the Loan Agreement, the Term Note, the Revolving

Note, and the Guaranty—contains a clause addressing where litigation arising out of the

documents might occur.  On this topic, the Loan Agreement says the following:

> 13.2 Consent to Jurisdiction. The Borrower, Parent, the Lender
> [sic] hereby irrevocably submit to the non-exclusive
> jurisdiction of any United States Federal Court or Texas state
> court sitting in Houston, Texas in any action or proceeding
> arising out of or relating to this Agreement or any of the Loan
> Documents and the Borrower, Parent, and Lender hereby
> irrevocably agree that all claims in respect of such action or
> proceeding may be heard and determined in any such United
> States Federal Court or Texas state court. . . . Nothing in this
> Section shall affect the right of the Lender to serve process in
> any other manner permitted by law or limit the right of the
> Lender to bring any such action or proceeding against any
> Credit Party or any of their property in the courts with subject
> matter jurisdiction of any other jurisdiction. Each of the
> Borrower and Parent irrevocably waives any objection to the
> laying of venue of any such suit or proceeding in the above
> described courts.[3]

---

[3]     Under the Loan Agreement, MRP Trading is the "Lender," Canary is the
"Borrower," and Frontier Energy Group is the "Parent."  Canary, Frontier Energy Group,
the remaining Canary Defendants, and Eberhart are all "Credit Part[ies]."  *See* Loan
Agreement § 1.1; *see id.* at 1.

Loan Agreement § 13.2.  Eberhart's Guaranty says something similar:

> Section 9.12  <u>Jurisdiction, Etc.</u>  Guarantor:
>
> (a) irrevocably and unconditionally submits, for itself and its property, to the non-exclusive jurisdiction of any Texas [s]tate court or federal court of the United States of America sitting in Houston[,] Texas, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Guaranty, or for recognition or enforcement of any judgment;
>
> (b) irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such Texas [s]tate court or, to the extent permitted by law, in such federal court;
>
> (c) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law;
>
> (d) irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Guaranty in any Texas [s]tate or federal court; and
>
> (e) irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.
>
> Nothing in this Guaranty shall affect any right that any party may otherwise have to bring any action or proceeding relating to this Guaranty in the courts of any jurisdiction[.]

Guaranty § 9.12.  Finally, both the Term Note and the Revolving Note contain the following provision: "This Note shall be interpreted and the rights of the parties hereunder shall be determined under the laws of, and enforceable in, the State of Texas."  Term Note at 1; Revolving Note at 1.

4

In a separate series of transactions—what the Parties call the "Equipment Loans"—MRP and its co-Plaintiffs, Portfolio Advisors and Allegiance Capital, extended an additional 24 loans to Canary to finance equipment for its business. Am. Compl. ¶ 27. Eberhart personally guaranteed some, but not all, of the Equipment Loans. *See id.* (documenting all 24 equipment loans and their associated loan documents). In March 2020, Canary ceased making required principal payments on the Equipment Loans. *Id.* ¶ 29.

The failure to make payments on the Equipment Loans was an event of default under the Loan Agreement. *Id.* ¶¶ 29–35; *see* Loan Agreement § 9.1(f). The default gave MRP the right to seek the full outstanding principal indebtedness under the Loan Agreement from Canary and from Eberhart under the Guaranty. Am. Compl. ¶¶ 36, 40; *see* Loan Agreement § 9.2; Guaranty § 2.2. In August 2020, MRP attempted to exercise that right by sending Canary and Eberhart a notice of default that "included a demand for payment . . . of the full accelerated indebtedness owing under the Loan Agreement, the Term Note, the Revolving Note and other Loan Documents." Am. Compl. ¶¶ 37–39, Ex. 6. To date, Eberhart and the Canary Defendants have not cured their default. *Id.* ¶ 43.

MRP, Portfolio Advisors, and Allegiance Capital brought this lawsuit to recover for the alleged defaults. In Count 1 of the operative complaint, MRP claims that the Canary Defendants breached the Loan Agreement and the associated Term and Revolving Notes. *Id.* ¶¶ 48–52. In Count 2, MRP claims that Eberhart breached his obligations as Guarantor of those agreements. *Id.* ¶¶ 53–57. And in Count 3, MRP claims in the alternative that all Defendants were unjustly enriched at its expense. *Id.* ¶¶ 58–61. In the remaining counts,

which are not relevant here, MRP and its co-plaintiffs assert claims for breach of contract and replevin related to the 24 Equipment Loans. *Id.* ¶¶ 62–102.

Before Eberhart had appeared in the case, the Canary Defendants moved to dismiss Counts 1 and 3 of the Amended Complaint without prejudice or, in the alternative, to sever those counts and transfer venue to the United States District Court for the Southern District of Texas, Houston Division. ECF No. 23; *see* 28 U.S.C. § 1404(a); Fed. R. Civ. P. 12(b)(6). Once Eberhart had appeared, he filed a substantially similar motion to dismiss Counts 2 and 3 without prejudice or, in the alternative, to sever them and transfer venue to the Southern District of Texas. ECF No. 38.[4]

## II

Although Defendants have filed two separate motions, they depend on the same legal arguments, so it makes sense to address them together. According to Defendants, the loan documents relevant to Counts 1 through 3 contain mandatory venue selection clauses, and those clauses may be enforced through either dismissal or transfer. *See* Canary Mem. in Supp. at 1–2 [ECF No. 26]; Eberhart Mem. in Supp. at 1–2 [ECF No. 37].

Regardless of which procedural mechanism would ultimately be appropriate,[5] Defendants primarily rely on 28 U.S.C. § 1404(a), which allows a district court to "transfer

---

[4]     On the same day that he filed his original motion, ECF No. 35, Eberhart filed an amended motion, ECF No. 38. The amended motion appears only to correct a clerical error.

[5]     Whether dismissal under Rule 12(b)(6) is ever a proper way to enforce a forum selection clause is subject to some debate. The Supreme Court explicitly left the question open after deciding that a forum selection clause is not a reason to dismiss under Rule 12(b)(3) when venue is authorized by statute. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*

any civil action to any other district or division where it might have been brought" "[f]or the convenience of the parties and witnesses, in the interest of justice." In a typical motion to transfer under § 1404(a), "precedent requires this Court to defer to the Plaintiffs' choice of Minnesota" as a forum unless a collection of public-interest and private-interest factors "strongly weigh in favor of transfer[.]" *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1179 (D. Minn. 1996). When a valid forum selection clause is the basis for a transfer request, however, that clause should "be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59–60 (internal quotation marks and citation omitted). A court deciding whether to transfer a case based on a forum selection clause owes no deference to a plaintiff's choice of forum and "must deem the private-interest factors" that normally inform the § 1404(a) inquiry "to weigh entirely in favor of the preselected forum." *Id.* at 63–64. Only "public-interest factors" could "conceivabl[y]" defeat a transfer motion based on a forum selection clause, but "such cases will not be common." *Id.* at 64 (citation omitted).

Courts will only enforce a forum selection clause, however, when the parties have actually agreed to submit their disputes to a specific forum. Put differently, a forum selection clause is only enforceable if it is mandatory rather than permissive. *See Dunne*

---

*for W. Dist. of Tex.*, 571 U.S. 49, 55–61 (2013). Since *Atlantic Marine*, at least one court in this District has dismissed a case under Rule 12(b)(6) based on a forum selection clause requiring litigation in state court. *See United Sugars Corp. v. Tropical Worldwide Corp.*, No. 13-cv-2718 (ADM/JJG), 2014 WL 1874753, at *7 (D. Minn. May 9, 2014). Other courts have suggested that dismissal under Rule 12(b)(6) is an improper means of enforcing a forum selection clause. *See, e.g.*, *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 n.6 (8th Cir. 2017). Regardless, the disposition of Defendants' motions makes it unnecessary to decide this question.

*v. Libbra*, 330 F.3d 1062, 1062–64 (8th Cir. 2003) (reversing a dismissal based on a forum selection clause after concluding that the clause was permissive); *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) ("Only mandatory clauses justify transfer or dismissal."). "Unlike mandatory clauses, which contain specific language to clearly indicate the parties' intent to designate one forum as exclusive, permissive clauses constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." *Best Buy Stores, L.P. v. Devs. Diversified Realty Corp.*, No. 05-cv-2310 (DSD/JJG), 2006 WL 3544956, at *3 (D. Minn. Dec. 8, 2006) (internal quotation marks and citation omitted). In short, if the clauses in this case are permissive, then neither dismissal nor transfer would be appropriate. *See Dunne*, 330 F.3d at 1062–64.

MRP does not challenge the validity of the venue selection clauses in this case, nor does it identify any "public-interest factors [that] overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67 (explaining that this burden falls on the party opposing transfer). Instead, it argues that Defendants' motions should be denied because the clauses are permissive. Pl.'s First Mem. in Opp'n at 10–17 [ECF No. 31]; Pl.'s Second Mem. in Opp'n at 9–10 [ECF No. 44].[6]  Defendants respond that the clauses are mandatory both by operation of a Texas statute and on their face. The Parties agree that the mandatory-versus-permissive question is an issue of contract interpretation governed by state law. Pl.'s

---

[6]     MRP also argues that the Canary Defendants—but not Eberhart—waived the right to "object to the laying of venue in any . . . Court with subject-matter jurisdiction." Pl.'s First Mem. in Opp'n at 13–14. Because Defendants are not entitled to dismissal or transfer on the merits of their motions, it is not necessary to decide whether any waiver occurred.

Second Mem. in Opp'n at 8; Canary Mem. in Supp. at 5; Eberhart Mem. in Supp. at 5–6. And because all of the loan documents relevant to these motions contain Texas choice-of-law provisions, the Parties further agree that Texas law should apply. *See* Guaranty § 9.7; Loan Agreement § 13.3; Term Note at 1; Revolving Note at 1; *see also BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 893, 895–96 (8th Cir. 2013); *Dunne*, 330 F.3d at 1064.

A

Defendants' principal argument is that a Texas statute makes the clauses in this case mandatory even if they would be permissive under ordinary contract principles. The statute in question, which appears in a chapter governing venue, says that "[a]n action arising from a major transaction shall be brought in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county." Tex. Civ. Prac. & Rem. Code § 15.020(b).[7] According to Defendants, the phrase "agreed in writing that a suit . . . may be brought in that county" refers to a permissive venue selection clause, and the phrase "shall be brought" effectively converts the clause from permissive to mandatory as a matter of law. Canary Mem. in Supp. at 9–11; Eberhart Mem. in Supp. at 8–10.

---

[7]   With a few exceptions not relevant here, a "major transaction" is "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." *Id.* § 15.020(a).

This argument raises an unexpectedly curious and difficult issue of statutory interpretation.[8] Generally, Texas courts construing a statute attempt "to give effect to the Legislature's intent by looking at [the statute's] plain and ordinary meaning." *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 749 (Tex. 2020); *see* Tex. Gov't Code Ann. § 312.005. When a statute is unambiguous, its plain meaning governs "unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (citations omitted); *see Tex. Student Hous. Auth. v. Brazos Cnty. Appraisal Dist.*, 460 S.W.3d 137, 141 (Tex. 2015). When a statute is ambiguous—*i.e.*, has multiple reasonable interpretations—a court may "look behind [its] words" to determine the legislature's purpose. *Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994); *see Tex. Dep't of Pub. Safety v. Swierski*, 49 S.W.3d 417, 419 (Tex. Ct. App. 2001). Whether or not a statute is ambiguous, "[a] court may consider the object sought to be obtained, circumstances under which the statute was enacted, and the consequences of a particular construction." *Atmos Energy*

---

[8]  According to MRP, Defendants' argument fails because section 15.020 is a procedural statute that only applies to suits filed in Texas state courts. *See* Pls.' First Mem. in Opp'n at 14–15. To be sure, any argument that section 15.020 makes venue improper in this District would be a non-starter because federal venue law applies in federal court. *See Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 260–61 (8th Cir. 1979); *see also Spencer v. Allstate Ins. Co.*, No. 2:16-CV-605-JRG, 2016 WL 6879598, at *1 n.2 (E.D. Tex. Nov. 22, 2016) (addressing a motion to transfer venue under § 1404(a) and rejecting the argument that a Texas mandatory-venue statute "control[led] the propriety of venue in [a] federal suit"); Arthur R. Miller, *Federal Practice and Procedure* § 3803 (4th ed. Oct. 2020 Update). But Defendants are making a different argument—that section 15.020 controls the meaning of the Parties' agreements under Texas substantive law. This argument will be addressed on its own terms.

*Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011) (citing Tex. Gov't Code § 311.023(1), (2), (5)).

The viability of Defendants' argument boils down to one question: does the phrase "agreed in writing that a suit . . . may be brought in that county" indicate that section 15.020 applies when parties to a major transaction have agreed to a permissive venue selection clause? If it does not, then Defendants' argument fails at the outset because the provision says nothing about the meaning of permissive venue selection clauses under Texas law.

Reading section 15.020(b)'s text in isolation provides no clear answers. There are at least three plausible interpretations of the phrase in question. The first is that, as Defendants suggest, it refers to a written agreement containing a permissive venue selection clause. This interpretation is plausible because the word "may" often suggests that a clause is permissive. *See, e.g.*, *TruGreen Landcare, L.L.C. v. Telfair Cmty. Ass'n*, No. H-12-514, 2013 WL 2147471, at *2 (S.D. Tex. May 14, 2013). The second interpretation is that the word "may" is used in a mandatory sense, such that the statutory phrase effectively means "may be brought *only* in that county." This interpretation is plausible because the word "may" can signal a mandatory requirement when context requires it. *See Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 631 (Tex. Ct. App. 2008); *cf. City of Mesquite v. Bellingar*, 701 S.W.2d 335, 336 (Tex. Ct. App. 1985) (concluding that a statute imposed a mandatory requirement even though it used the word "may"). Moreover, the very next subsection of the statute seems to use the word "may" as part of the mandatory phrase "may not." Tex. Civ. Prac. & Rem. Code § 15.020(c); *see Beeman v. Livingston*, 468 S.W.3d 534, 539 (Tex. 2015) ("[W]hen a word is used throughout a

statute, we generally construe the statute to provide consistent meaning to that word."). The third plausible interpretation is that the phrase "may be brought" does not refer to the substance of the parties' written agreement at all. Instead, it could refer to the option whether to file a suit in the first place. Under this interpretation, the phrase would best be understood to mean "a suit . . . may be brought, *if at all*, in that county."

Neither section 15.020 nor its surrounding provisions clearly favors any of these three interpretations. As explained below, however, the statute's context, the way courts have applied it, and the potentially absurd consequences of Defendants' interpretation all point to the conclusion that section 15.020 only applies to mandatory venue selection clauses. This rules out Defendants' interpretation and makes it unnecessary to decide between the other potential interpretations.

The starting point for understanding section 15.020's context is a distinction that Texas law draws between "forum selection clauses" and "venue selection clauses." "Forum" generally refers to a state or a sovereign, while "venue" refers to a particular county or district within a forum. *In re Great Lakes Dredge & Dock Co.*, 251 S.W.3d 68, 73–74 (Tex. Ct. App. 2008). So, under Texas law, "a 'forum'-selection agreement is one that chooses another state or sovereign as the location for trial, whereas a 'venue'-selection agreement chooses a particular county or court within that state or sovereign." *Id.* The distinction makes a legal difference. Texas law, like federal law, strongly favors the enforcement of *forum* selection clauses. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 111–12 (Tex. 2004) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)). By contrast, *venue* selection clauses—

like the ones in the Loan Agreement and Guaranty—are generally invalid unless specifically authorized by statute. *Great Lakes*, 251 S.W.3d at 76; *see Shamoun & Norman, LLP v. Yarto Int'l Grp., LP*, 398 S.W.3d 272, 293 (Tex. Ct. App. 2012). Section 15.020 is an exception to that general rule, allowing venue selection clauses to be enforced in cases involving "major transaction[s]." Tex. Civ. Prac. & Rem. Code § 15.020(a); *see In re Grp. 1 Realty, Inc.*, 441 S.W.3d 469, 472 (Tex. Ct. App. 2014).

With this context in mind, the better understanding is that section 15.020 only applies when parties have agreed to a mandatory venue selection clause. First, this interpretation is consistent with the statute's apparent purpose. Texas's general rule prohibiting venue selection clauses limits what contracting parties can do, and legislative history suggests that section 15.020 was meant to ease those restrictions by giving parties the freedom to "specify which locations were proper for venue, which locations were improper, or both." House Research Organization Bill Analysis, H.B. 1272, 76th Regular Sess. (Tex. Apr. 27, 1999), https://lrl.texas.gov/scanned/hroBillAnalyses/76-0/SB648.PDF; *see also* Analysis of S.B. 648, Office of House Bill Analysis, 76th Regular Sess. (Tex. Apr. 26, 1999), https://lrl.texas.gov/scanned/officeOfHouseBAs/76-0/SB648ENG.htm (placing section 15.020 in the context of the Supreme Court's jurisprudence governing mandatory forum selection clauses). Defendants' interpretation, which would essentially outlaw permissive venue selection clauses in major transactions, is inconsistent with the goal of leaving the choice to private parties.[9]

---

[9]   Add to the statute's general purpose that it would seem unusual for the Texas legislature to place a rule about contractual meaning in a venue statute.

Second, judicial precedent supports the conclusion that section 15.020 only applies to mandatory venue selection clauses.   In the more than two decades since the Texas legislature enacted section 15.020, no court has endorsed Defendants' interpretation.  Cases in which Texas courts have applied the statute have involved mandatory venue selection clauses.  *See, e.g.*, *In re Happy State Bank*, No. 02-17-00453-CV, 2018 WL 1918217, at *1, 7–8 (Tex. Ct. App. Apr. 23, 2018); *Grp. 1 Realty*, 441 S.W.3d at 471–74; *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 357–58 (Tex. Ct. App. 2009).  Two Texas courts have suggested—though admittedly have not held—that section 15.020 would not apply to a permissive venue selection clause.  *See In re Fisher*, 433 S.W.3d 523, 531–32 (Tex. 2014) (addressing the argument that section 15.020 was "inapplicable" because the underlying clause was permissive); *In re R.R. Repair & Maint., Inc.*, No. 05-09-01035-CV, 2009 WL 3531636, at *3–4 (Tex. Ct. App. Nov. 2, 2009) (concluding that a venue selection clause "provide[d] for mandatory venue . . . as required by section 15.020").  And in at least two cases, federal courts have not mentioned section 15.020 even when, under Defendants' interpretation, it would seem to apply.  *See R&R Packaging, Inc. v. J.C. Penney Corp.*, No. 5:12-cv-05215-PKH, 2013 WL 773455, at *2, 4–5 (W.D. Ark. Feb. 28, 2013) (addressing a permissive venue selection clause in a multi-million-dollar contract); *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 555, 560–61 (N.D. Tex. 2003) (same).  These authorities significantly undermine the argument that section 15.020 has anything to say about permissive venue selection clauses.

Third, Defendants' interpretation could create absurd consequences, or at least serious difficulties.  *See Hughes*, 246 S.W.3d at 625–26.  Under their reading, "[i]f a venue

14

clause provides in any respect that a plaintiff may file suit in a Texas forum and the action arises from a major transaction, a court must give that clause mandatory effect[.]"  Canary Reply Mem. at 10.  This raises a series of questions.  For example, does the statute apply to a venue selection clause—like the ones in this case—that authorizes jurisdiction in a federal district court covering multiple counties?[10]  After all, section 15.020 refers to agreements that specify a "county," not a "district" or a "court."  Moreover, what should a court do with a permissive venue selection clause that authorizes jurisdiction in two different Texas counties?  Would venue be mandatory in both courts at the same time?  If not, would the plaintiff's choice of venue win out, or would a defendant be able to require transfer to the other court?  What if a permissive venue selection clause authorized jurisdiction in a Texas county and a county in a different state?  The idea that the Texas legislature has the power to deprive parties of their contracted-for option to litigate in another state would seem to implicate significant legal issues and give new meaning to the slogan, "Don't Mess with Texas."  The bottom line is that these questions have no clear answers.  But one way to avoid them is to conclude that section 15.020(b) only applies when parties have agreed to a mandatory venue selection clause.

B

The remaining question, then, is whether the clauses in this case are mandatory or permissive under Texas common law.  Texas courts "interpret forum-selection clauses

---

[10]    *See Houston Division*, United States District & Bankruptcy Court, Southern District of Texas, https://www.txs.uscourts.gov/offices/houston-division (last visited Mar. 12, 2021).

using contract-construction principles because 'a forum selection clause is a creature of contract.'" *Vak v. Net Matrix Sols., Inc.*, 442 S.W.3d 553, 559 (Tex. Ct. App. 2014) (alteration and citation omitted). The "primary goal" of contract interpretation is to "determine the parties' intent as reflected by the language they used." *Fisher*, 433 S.W.3d at 532. Accordingly, whether a clause is mandatory or permissive is a context-specific question that depends on the clause's language. *See Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324–26 (Tex. Ct. App. 1999); *see also In re Agresti*, Nos. 13-14-00126-CV, 13-14-00149-CV, 13-14-00154-CV, 13-14-00168-CV, 2014 WL 3408691, at *5 (Tex. Ct. App. May 29, 2014) (collecting cases). "An enforceable forum selection clause must contain explicit language regarding exclusivity." *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 29 S.W.3d 291, 297 (Tex. Ct. App. 2000). Some words and phrases, like "shall" and "exclusive," are associated with mandatory clauses, while others, like "may" and "non-exclusive," are associated with permissive ones. *See, e.g.*, *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 615 (Tex. Ct. App. 2005); *Ramsay*, 254 S.W.3d at 631. Ultimately, however, there are no magic words; whether a clause is mandatory or permissive depends on how the words are used in context. *See Ramsay*, 254 S.W.3d at 631 (concluding that a clause was mandatory even though it used the word "may").

The plain language of each of the clauses in this case shows that they are permissive. Start with the clause in the Loan Agreement. It provides that the Parties "irrevocably submit to the *non-exclusive* jurisdiction" of state and federal courts in Houston, Texas, for cases "arising out of or relating to [the] Agreement or any of the Loan Documents." Loan

16

Agreement § 13.2 (emphasis added). This type of jurisdiction-granting language is permissive in that it "specif[ies] a particular jurisdiction, but do[es] not exclude others." *Agresti*, 2014 WL 3408691, at *6. And if the word "non-exclusive" left any doubt, the clause goes further, providing that "[n]othing in this Section shall . . . limit the right of [MRP] to bring [an] action or proceeding . . . in the courts with subject matter jurisdiction of any other jurisdiction." Loan Agreement § 13.2. This language reflects an unambiguous intent to permit suits in courts outside of Houston, Texas. *See Best Buy Stores, L.P.*, 2006 WL 3544956, at *3–4; *BancorpSouth Bank*, 706 F.3d at 895–96 (concluding, under Missouri law, that a substantially similar clause was permissive).

For the same reasons, the clause in the Guaranty is permissive. Like the clause in the Loan Agreement, it provides that Eberhart will submit to the "non-exclusive jurisdiction" of a state or federal court in Houston, Texas; that disputes related to the Guaranty "may be heard and determined" in such courts; and that the Parties retained the right "to bring any action or proceeding relating to [the] Guaranty in the courts of any jurisdiction[.]" Guaranty § 9.12. The only reasonable interpretation of this language is that the parties were permitted, but not required, to file their lawsuits in Houston.

The result is the same for the clauses in the Term and Revolving Notes, which are identical to one another. Those clauses provide, essentially, that the Parties' rights "shall be . . . enforceable[] in the State of Texas." Term Note at 1; Revolving Note at 1. Defendants argue that the word "shall" indicates that this clause is mandatory. Canary Mem. in Supp. at 9. But "[a] forum selection clause is not necessarily mandatory or exclusive simply because it contains the word 'shall.'" *Hidden Values, Inc. v. Sandoval*,

17

No. 3:09-CV-0034-B, 2009 WL 10677477, at *4 (N.D. Tex. June 26, 2009) (citation omitted). In these clauses, the key word is not "shall"; it is "enforceable." That word leaves the Parties with options. They may enforce their rights in Texas, but "[t]here is no use of clear language such as 'only' or 'shall be brought' that designates exclusivity." *Id.* (holding that the phrase "[t]his agreement shall be enforceable in Dallas County, Texas," was permissive); *see also N. Calif. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036–37 (9th Cir. 1995) (similar); *Thompson v. Titus Transp., LP*, No. 11-CV-1338-EFM-KMH, 2012 WL 5933075, at *6 (D. Kan. Nov. 27, 2012) (similar). In short, all four relevant documents contain permissive clauses. That means there is nothing to enforce, and Defendants' motions will accordingly be denied.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.  Defendants Canary, LLC, Frontier Energy Group, Inc., Canary Drilling Services, LLC, Canary Production Services, LLC, Canary Wellhead Equipment, Inc., and Canary Wellhead Manufacturing, Inc.'s Motion for Partial Dismissal Under Rule 12(b)(6) or, in the Alternative, Motion to Transfer Venue Under 28 U.S.C. § 1404(a) and Sever Claims Under Rule 21 [ECF No. 23] is **DENIED**; and

2.  Defendant Dan K. Eberhart's Amended Motion for Partial Dismissal Under Rule 12(b)(6) or, in the Alternative, Motion to Transfer Venue Under

28 U.S.C. § 1404(a) and Sever Claims Under Rule 21, and Joinder in Canary

Defendants' Motion for Partial Dismissal [ECF Nos. 35, 38] is **DENIED**.


Dated: March 12, 2021                    s/ Eric C. Tostrud
                                         Eric C. Tostrud
                                         United States District Court